PEOPLE v CAFFRAY

1. ATTORNEY AND CLIENT—CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL—MULTIPLE DEFENDANTS—PREJUDICE.

A criminal defendant was denied the effective assistance of counsel where he and a codefendant were represented by the same court-appointed attorney in a joint trial in which the prosecution introduced evidence of a confesssion alleged to have been made by the codefendant which implicated the defendant, and the defense counsel put the codefendant on the witness stand to testify on his own behalf; a conflict prejudicial to the defendant was created between defense counsel's obligation to the defendant and defense counsel's interest in bolstering the codefendant's case.

2. ATTORNEY AND CLIENT—CRIMINAL LAW—COURT-APPOINTED ATTORNEYS—MULTIPLE DEFENDANTS.

Trial courts generally should not assign a single attorney to represent multiple criminal defendants, and such an assignment, for good cause made, will only be allowed where the positions of the defendants are not conflicting.

3. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR—REVERSIBLE ERROR—STANDARDS FOR DETERMINATION.

The standards by which error is measured to determine whether it is reversible or merely harmless are; first, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless, and second, if not so basic, can a belief be declared that the error was harmless beyond a reasonable doubt.

Appeal from Berrien, William S. White, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 319.

Duty of court when appointing counsel for defendant to name attorney other than one employed by, or appointed for, a codefendant. 148 ALR 183.

[3] 5 Am Jur 2d, Appeal and Error § 776 et seq.

mitted June 4, 1975, at Grand Rapids. (Docket No. 19630.) Decided July 21, 1975.

George Caffray was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *John F. Sullivan,* Assistant Prosecuting Attorney, for the people.

*Keller, Keller & Creager,* for defendant on appeal.

Before: McGREGOR, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

McGREGOR, P. J. On November 1, 1973, defendant was found guilty by a jury of armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to serve a prison term of 20 to 40 years and now appeals his conviction as of right.

By complaint and warrant issued September 16, 1972, defendant was charged with the September 15, 1972 armed robbery of Ken's Food Town. After defendant had been bound over to circuit court for trial, plaintiff filed a motion in the trial court, on November 22, 1972, to consolidate defendant's case with the case of one Roger Craig—defendant's alleged companion in the robbery of the store. On Novemer 27, 1972, a combined arraignment and hearing on plaintiff's motion to consolidate was held, at which time defense counsel—who had been appointed to represent *both* defendant and co-defendant Craig—objected to the proposed consolidation on the grounds that defendant had a prior criminal record while Craig did not, and that the motion might in fact be premature due to the

fact that counsel intended to file a motion regarding evidence submitted at the defendant's preliminary examination. The trial judge, however, rejected defense counsel's arguments and ordered consolidation of the two cases for trial.

Defendant's joint trial with co-defendant Roger Craig commenced on October 30, 1973, both defendants being represented by appointed counsel Richard Globensky.

During the plaintiff's case in chief, Benton Township police officer Roger Peters recounted a statement that co-defendant Craig allegedly gave to him after Craig's arrest, confessing Craig's perpetration of the robbery and implicating defendant as Craig's accomplice in the holdup. The trial judge thereafter, *sua sponte,* warned the jury that nothing contained in Craig's confession could be utilized by the jury against defendant Caffray, since the statement had been made outside defendant Caffray's presence.

After plaintiff had rested and the trial judge had denied defense counsel's motion for directed verdict as to both defendants, the defense counsel presented co-defendant Craig as the sole witness. At this time, Craig categorically denied both his and the defendant's participation in the robbery and emphatically denied having made any statement to the police officers following his arrest. At the conclusion of this testimony, defense counsel moved for a mistrial for defendant Caffray on the ground that Craig's confession implicating the defendant had prejudiced defendant's case. The trial judge denied this motion.

During his closing argument, the prosecutor again stated that Craig's statement had named defendant Caffray as one of the robbers. However, in his charge to the jury, the trial judge reiterated

the fact that Craig's statement that defendant Caffray had participated in the robbery could not be considered against him due to its hearsay nature. The jury shortly thereafter convicted both this defendant and co-defendant of the crime charged.

Defendant raises six assignments of error. We need only consider one, as it warrants the reversal of defendant's conviction in this case.

This Court is asked to determine whether this defendant has been deprived of his right to effective assistance of counsel due to the fact that both he and his co-defendant were represented by the same attorney during their joint trial, wherein the plaintiff introduced evidence of a confession by the co-defendant implicating this defendant and wherein the co-defendant subsequently took the stand to testify on his own behalf.

In analyzing the question presented, we must begin with the case of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), wherein the Supreme Court stated, p 126:

"We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' (co-defendant's) confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule *Delli Paoli [Delli Paoli v United States,* 352 US 232; 77 S Ct 294; 1 L Ed 2d 278 (1957)] and reverse."

It is important to note that a crucial element present in *Bruton* was the fact that the confessing co-defendant did not take the stand and, therefore, *Bruton* did not have an opportunity to cross-exam-

ine the confessing co-defendant in regard to his statements.

In the instant case, however, Craig, the confessing co-defendant, did take the stand and was therefore subject to cross-examination by defendant's counsel, who also represented Craig.

A fact situation identical to that of the instant case was present in *Baker v Wainwright,* 422 F2d 145 (CA 5, 1970). There, Baker had been a non-confessing defendant in a joint trial with the confessing defendant, where both individuals had been represented by the same court-appointed counsel, and where evidence of an oral confession implicating Baker in the crime had been introduced into evidence. Additionally, as in the instant case, the confessing defendant had taken the stand to testify and, likewise, the trial judge in that case had also given the standard hearsay instruction restricting jury consideration of the confession to the confessing defendant only.

The *Baker* court noted that since the confessing defendant had taken the stand to testify and was therefore subject to cross-examination by defense counsel, no confrontation problem existed under *Bruton.*[1]

However, in next specifically addressing itself to the question of effective counsel, the *Baker* court said, p 148:

"However, resolution of the confrontation question

---

[1] "Baker's right under the Sixth Amendment to be confronted with the witnesses against him was in no way denied in the case at bar because Damron took the stand and made himself subject to cross-examination by Baker. Indeed, as the Attorney General of Florida contends, the most skillful cross-examiner could not have produced a better result for Baker than Damron's testimony that his entire confession had never been made and that neither he nor Baker robbed Infinger." *Baker v Wainwright, supra,* p 148. *See also James v United States,* 416 F2d 467 (CA 5, 1969).

does not end our inquiry. Baker also presents the issue of *Bruton's* effect where co-defendants are represented by the same court appointed attorney. It is this issue that requires reversal for a new trial. The classic in this area of the law is *Glasser v United States,* 315 US 60, 62 S Ct 457, 86 L Ed 680 (1942). Its teachings are the basis for our holding here. Glasser, an attorney charged in a conspiracy action, objected when the court appointed his attorney, Stewart, to represent another defendant, Kretske, being tried jointly with Glasser. The appointment was nevertheless made. Glasser's conviction was reversed principally because the joint appointment deprived Glasser of effective counsel.

"However, *Glasser* does not hold that the mere fact that a single attorney is appointed to represent two defendants in a joint criminal trial is ipso facto evidence of lack of effective counsel. Some prejudice must be shown by one who would successfully object. But, since we hold that *Bruton's* post-trial retroactive impact on the case at bar created a definite conflict between the interests of the joint defendants at the instant that the prosecution introduced its evidence of Damron's implication of Baker, Baker did not have to produce any specific proof of prejudice resulting from this conflict because prejudice is self-evident. If counsel had not placed Damron on the witness stand, then he probably could have voided the trial as to Baker for in just such a situation *Bruton* says that the error in admitting the confession could not be cured as to Baker even by direct instructions to the jury to disregard it as to Baker's case. This probability became a certainty in this case because we are unable to say that the other, valid evidence of Baker's guilt substantial as it was, was so overwhelming that, beyond a reasonable doubt, the confessory implication was harmless. *When a defense counsel has it within his power to void a proceeding against his client and, because of his representation of another is not completely free to exercise this power, he most assuredly has a directly conflicting interest. When he resolved this conflict in favor of putting Damron on the stand, Baker was prejudiced.* (Emphasis supplied.)"

The same prejudice is likewise present in the

instant case. Here, after plaintiff had introduced evidence of Craig's alleged statement implicating the defendant as the co-perpetrator of the crime, the single defense counsel had it within his power to withhold co-defendant Craig from the witness stand. If Craig had not testified, defendant clearly would have been entitled to a reversal of his conviction under *Bruton.* On the other hand, once the prosecution introduced police witness testimony regarding co-defendant Craig's inculpatory confession, the single defense counsel was most likely under a great deal of pressure to put Craig on the stand, if only to deny having made the statement to the police and thus bolster Craig's own case. It is precisely this type of conflict occurring in a single defense counsel who represents both the confessing and the non-confessing defendant which *Baker* declared to be prejudicial to the non-confessing defendant.

While Federal cases are certainly not controlling of Michigan jurisprudence, the cogent logic set forth in the *Baker* opinion compels us to follow that decision in the present case. Furthermore, in our decision to follow *Baker,* we are guided by the language in *People v Dockery,* 20 Mich App 201, 210; 173 NW2d 726 (1969), where the Court stated:

"The right to effective legal representation is fundamental to criminal procedure. Trial courts preferably should not assign a single attorney to represent multiple defendants. *Such an assignment, when for good cause made, will only be allowed where the positions of the defendants are not conflicting.* The assignment of counsel is designed to aid a defendant and should not itself become a source of prejudice." (Emphasis added.)

Here, as noted above, the positions of the de-

fendants were clearly conflicting and thus within the prohibition of *Dockery.*

Having found error in the instant case, we are once again presented with the issue inherent in such cases as to whether the error committed is reversible or harmless. The standards by which we measure error to determine whether it is reversible, or merely harmless, have become well settled and are set forth in *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974):

"Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?"

Assuming without deciding that the present error does not fall within the first category, we nevertheless are unable to say that the other valid evidence of defendant's guilt was so overwhelming that, beyond reasonable doubt, the confessory implication resulting from Craig's alleged statement was harmless. In this regard, we note that no witness to the robbery was able to identify this defendant as the participant, thus making Craig's statement implicating the defendant even more important.[2]

---

[2] Craig also perfected an appeal to this Court which remanded the case to the trial court to permit Craig to file a motion for a new trial, on the grounds, *inter alia,* that Craig's statement to the police was involuntary and that plaintiff and the trial court erred reversibly by permitting Craig to take the stand and testify at trial, while in an allegedly intoxicated condition. *People v Craig,* (Docket No. 19633, order of April 15, 1975).

For the reasons above stated, defendant's conviction is reversed and remanded for a new trial.[3]

---

[3] In other cases where the problem of confessing and non-confessing co-defendants arises, the prosecution has several alternatives: (1) separate trials; (2) possibly, separate counsel. *See Nelson v O'Neil,* 402 US 622; 91 S Ct 1723; 29 L Ed 2d 222 (1971); (3) possibly, deletion of all references in the confession to the non-confessing defendant. *See United States v Sims,* 434 F2d 258 (CA 5, 1970).